IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GARY C. YOUNGS,              Case No.: 6:16-CV-01601-AC

    Plaintiff,                       OPINION AND ORDER

v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

              Defendant.

ACOSTA, Magistrate Judge:

Gary C. Youngs ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is not supported by substantial evidence, his decision should be REVERSED and REMANDED for further proceedings.

\\\\\

\\\\\

*Procedural Background*

Plaintiff filed his application for DIB on June 19, 2012, alleging disability as of March 20, 2000. (Tr. 156-62.) The Commissioner denied his application initially and upon reconsideration and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 68-85, 86-103, 114-15.) An administrative hearing was held on November 5, 2014. (Tr. 35-67.) After the hearing, the ALJ issued an unfavorable decision on December 12, 2014, finding plaintiff not disabled. (Tr. 8-28.) The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final. (Tr. 1-4.) This appeal followed. Plaintiff argues that the ALJ erred by improperly evaluating the medical opinion evidence of record. (Pl.'s Opening Br. 2-20, Pl.'s Reply Br. 1-8.)

*Factual Background*

Born in September 1952, plaintiff was 62 years old at the time of the hearing. (Tr. 40, 156.) He speaks English and his highest education level is the twelfth grade. (Tr. 54, 82, 102.) He stopped working in March 2000 due to a shoulder injury, and has been unable to work after subsequently developing an anxiety disorder. (Tr. 40-41, 156.) Plaintiff alleges disability due to a damaged rotator cuff and disconnected biceps muscle in his right arm, an injured rotator cuff in his left arm, severe anxiety disorder and panic attacks, gunshot shrapnel in his right leg, a frontal foot drop, gout attacks in his knee and foot, neck pain and injury, foot pain, and permanent damage to his shoulder joint. (Tr. 68, 88, 181.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a).[1] First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520©. If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one

---

[1] Effective March 27, 2017, updates were made to the regulations and some sections of the regulations were renumbered. The C.F.R. sections referenced throughout this opinion are the versions of the C.F.R. that were in effect at the time plaintiff requested judicial review.

Page 3 - OPINION AND ORDER

of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id*; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id* at 142; 20 C.F.R. § 404.1520(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 13.) At step two, the ALJ concluded that plaintiff had the following severe impairments: cervical degenerative disc disease, mild carpal tunnel syndrome on the right, history of a gunshot wound to the right leg, history of right shoulder degenerative joint disease concerning the acromioclavicular joint, and anxiety with panic attacks. (Tr. 13-15.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 15-16.)

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except he is limited to no more than occasional climbing or bilateral overhead reaching. The claimant is also limited to no more than occasional pushing or pulling with

his right upper extremity and with his right lower extremity. The claimant is limited to no more than frequent handling and fingering with his right hand. The claimant is also limited to occupations that require no more than occasional interaction with coworkers and the general public. Due to his reduced tolerance to stress and due to a noticeable increase in the frequency and severity of panic attacks when experiencing an increase in stress, the claimant would function best in a work environment where he is limited to simple, repetitive, routine tasks.

(Tr. 16-22.)

At step four, the ALJ found that plaintiff was unable to perform his past relevant work as a warehouse worker and a laborer. (Tr. 22.) At step five, the ALJ found, considering plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (Tr. 23.) Therefore, the ALJ concluded plaintiff was not disabled. (Tr. 23-24.)

*Discussion*

Plaintiff argues that the ALJ erred by failing to reasonably evaluate the medical opinion evidence of record. (Pl.'s Opening Br. 2-20, Pl.'s Reply Br. 1-8.) Specifically, plaintiff argues that the ALJ erred by failing to properly evaluate the medical opinions of Dr. Robert Kaye, Dr. Paul Puziss, Dr. Rory Richardson, Dr. Roy D. Clark, Jr., Dr. Christian Kole, Dr. Charles Bellville, and the medical opinions from the Washington Vocational Services State Fund medical evaluators. (*Id.*)

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical and mental restrictions." 20 C.F.R. § 404.1527(a)(2). "The ALJ must explicitly reject medical opinions, or set forth specific, legitimate reasons for crediting one medical opinion over

another." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, an ALJ may not simply select evidence to support the conclusion that a plaintiff is not disabled; rather, the ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001).

Here, plaintiff argues the ALJ erred when evaluating the medical opinions of Drs. Kaye, Richardson, Puziss, Kole, Clark, Bellville, and the medical opinion from the Washington Vocational Services State Fund medical providers. (Pl.'s Opening Br. 2-20, Pl.'s Reply Br. 1-8.) The court addresses plaintiff's arguments with respect to his physical and mental limitations.

I. Medical Opinion Evidence Concerning Plaintiff's Physical Impairments.

First, plaintiff argues that the ALJ erred by improperly rejected the medical opinions of Dr. Robert Kaye and Dr. Paul Puziss, who evaluated plaintiff with respect to his shoulder injury. (Pl.'s Opening Br. 8-11, Pl.'s Reply Br. 1-3.)

An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

A. Dr. Robert Kaye.

Dr. Kaye was plaintiff's primary treating physician who began treating plaintiff in May 2003 for his shoulder injury. (Tr. 249.) On July 28, 2003, Dr. Kaye submitted a typed letter to the Washington Department of Labor and Industries on plaintiff's behalf, where he wrote that it was his medical opinion that plaintiff was "incapable of engaging in reasonably continuous gainful employment from 5-3-03 through current." (Tr. 245.) At the bottom on the letter, Dr. Kaye included a handwritten note where he wrote that "based on the patient's history and physical findings that he has been unable to work from the time of the original surgery."[2] (*Id.*)

The ALJ was required to give a specific and legitimate reason for discrediting Dr. Kaye's opinion because it was inconsistent with the medical opinion of Dr. Jena Schliter who found that plaintiff could do light work during that same time. (*See* tr. 945, 953; *see also Bayliss*, 427 F.3d at 1216 (the contradicted opinion of a treating or examining physician can be rejected with specific and legitimate reasons that are supported by substantial evidence).) Here, the ALJ gave Dr. Kaye's July 28, 2003 medical opinion "little weight," finding that Dr. Kaye failed to "cite objective medical findings in support of [his] conclusion." (Tr. 20.) An "ALJ need not accept the opinion of any

---

[2] Plaintiff underwent his first shoulder surgery on May 9, 2001. (*See* tr. 14, 93, 269, 277, 284, 287, 626.)

Page 7 - OPINION AND ORDER

physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

The ALJ's finding is supported by the record. An independent review of the record shows that plaintiff recovered well from shoulder surgery, and despite sustaining a minor injury during physical therapy in 2004, had no additional complications. (*See* tr. 277, 293, 347, 357, 463, 466-68, 549, 643, 1225.) Additionally, medical providers found on June 11, 2001, that plaintiff was able to return to work with modified duties. (Tr. 293.) As the ALJ gave a specific and legitimate reason, supported by substantial evidence, for discrediting Dr. Kaye's medical opinion concerning plaintiff's shoulder impairment, there is no error.

  B. *Dr. Paul Puziss.*

Next, plaintiff argues that the ALJ improperly rejected the medical opinion of Dr. Puziss who completed a Work Restriction Evaluation on August 30, 2004, finding that plaintiff could not work eight hours a day, and had a lifting restriction of one to ten pounds. (Pl.'s Opening Br. 9, Pl.'s Reply Br. 1-3.)

Here, the ALJ gave Dr. Puziss's August 2004 opinion "little weight." (Tr. 20.) The ALJ found that Dr. Puziss's opinion was only a "temporary finding," noting that Dr. Puziss wrote that plaintiff "should be capable of returning to work in a month." (*Id.*) The ALJ additionally discounted Dr. Puziss's opinion after finding the one-month restriction was only related to plaintiff's physical therapy injury, and not "an impairment fulfilling the duration requirement of 12 continuous months." (*Id.*, citing tr. 373.) Indeed, the record shows Dr. Puziss wrote that plaintiff's projected release date for return to work was October 1, 2004. (Tr. 367, 375.) Plaintiff argues that other doctors limited

him to lifting no more than ten pounds, which further supports Dr. Puziss's medical findings, however the ALJ cited medical records where plaintiff was found to have full range of motion in his shoulder and had the ability lift more than ten pounds. (*See* tr. 19, citing tr. 639, 1361.) Additionally, an independent review of the record shows Dr. Puziss asked to close plaintiff's claim on March 7, 2005, after finding that plaintiff was "medically stationary" and had "done quite well after his more recent shoulder surgery." (Tr. 457.)

Although plaintiff disagrees with the ALJ's interpretation of the medical record, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The ALJ reasonably evaluated Dr. Puziss's medical opinion concerning plaintiff's physical impairments. There is no error.

II.     Medical Opinion Evidence Concerning Plaintiff's Mental Impairments.

Next, plaintiff argues that the ALJ erred by improperly evaluating medical opinion evidence concerning his mental impairments. (Pl.'s Opening Br. 11-20, Pl.'s Reply Br. 3-8.) Specifically, plaintiff argues that the ALJ erred by failing to properly evaluate the medical opinion evidence of Drs. Kaye, Richardson, Kole, Clark, Bellville, and the Washington Services State Fund medical evaluators, with respect to his mental health impairments. (*Id.*)

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also Crane v. Shalala*, 76 F.3d 251, 255. The ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence. *Holohan*, 246 F.3d at 1207. When developing the record, the ALJ "need not discuss all evidence presented to [him]. Rather, [he] must explain why

Page 9 - OPINION AND ORDER

'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

  *A.  Dr. Robert Kaye.*

Plaintiff argues that the ALJ erred when evaluating Dr. Kaye's medical opinion concerning his mental impairments. (Pl.'s Opening Br. 11-20, Pl.'s Reply Br. 3-8.) Plaintiff makes two distinct arguments: first, that the ALJ failed to discuss Dr. Kaye's June 4, 2005 medical opinion; and second, that the ALJ failed to provide a legally sufficient reason to discredit Dr. Kaye's October 13, 2008, and August 10, 2009 medical opinions. (Pl.'s Opening Br. 11-20, Pl.'s Reply Br. 3-8.) The court addresses each argument below.

First, plaintiff argues that the ALJ erred by failing to address Dr. Kaye's June 4, 2005 medical opinion. (Pl.'s Opening Br. 12, Pl.'s Reply Br. 4.) In his June 4, 2005 letter, Dr. Kaye wrote that plaintiff's panic attacks were "currently . . . exceedingly disabling to [plaintiff] and basically render him unable to return to the work place until they are resolved . . . ." (Tr. 621.) As plaintiff correctly notes, the ALJ did not specifically discuss this letter. Although an ALJ is not required to discuss all evidence presented to him, the ALJ must explain why "significant probative evidence has been rejected." *See Vincent*, 739 F.2d at 1394-95.

Dr. Kaye treated plaintiff for a number of years, both before, and after plaintiff's date last insured. (*See* tr. 692, 792, 801, 818, 822, 824, 832, 840, 1465, 1726, 1729, 1732, 1754, 1757, 1759, 1772, 1954.) Initially, Dr. Kaye noted some improvement in plaintiff's mental impairments, yet over time found plaintiff's anxiety became more debilitating, eventually writing in June 11, 2011, that he considered plaintiff "permanently disabled by the industrial injuries which [plaintiff] has suffered ... ." (Tr. 1954.) Given that Dr. Kaye's June 4, 2005 letter was written during his continued

treatment of plaintiff, and it described his overall findings concerning the severity of plaintiff's mental impairments, it was "significant, probative" evidence that the ALJ was required to consider. *See Holohan*, 246 F.3d at 1207 (9th Cir. 2001). The ALJ erred by failing to discuss Dr. Kaye's June 4, 2005 medical opinion.

Next, plaintiff argues that the ALJ erred by failing to provide a legally sufficient reason for discrediting Dr. Kaye's October 13, 2008, and August 10, 2009 medical opinions. (Pl.'s Opening Br. 11-20, Pl.'s Reply Br. 3-8.) On October 13, 2008, Dr. Kaye wrote a letter stating that he had treated plaintiff from December 31, 2003, through the present, and that it was his professional opinion that plaintiff's right shoulder and mental health conditions "have kept [plaintiff] from engaging in any form of reasonably continuous gainful employment." (Tr. 1726.) On August 10, 2009, Dr. Kaye wrote a letter stating that "[s]econdary to the combination of problems both physical with the shoulder and mental with the severe panic episodes, [plaintiff] should be considered totally and permanently disabled." (Tr. 1925.)

Here, the ALJ gave Dr. Kaye's medical opinions "no weight" finding that both letters were submitted after the date last insured and failed to cite objective medical evidence in support of the conclusions. (Tr. 20.) Additionally, the ALJ found that Dr. Kaye "failed to report what time period he was referencing," and "did not list any specific limitations." (*Id.*)

The ALJ's reasons for rejecting Dr. Kaye's medical opinion are not supported by substantial evidence. The ALJ was required to give a specific and legitimate reason for discrediting the medical opinion of Dr. Kaye because it was contradicted by the medical opinion of Dr. Sharon Eder, who found plaintiff could perform other work in the national economy and was therefore not disabled. (Tr. 82, *see also Bayliss v*, 427 F.3d at 1216.) First, the ALJ discredited Dr. Kaye's opinion finding

Page 11 - OPINION AND ORDER

it was submitted after the date last insured, however this fact alone is not a specific and legitimate reason for discrediting a treating physician's medical opinion as an ALJ is required to consider the medical record as a whole. *See Holohan*, 246 F.3d at 1207. Because Dr. Kaye had treated plaintiff over the years, the ALJ should have considered his medical opinion when making a determination of disability.

Next, the ALJ discredited Dr. Kaye's medical opinion, finding it failed to cite objective medical evidence. (Tr. 20.) This court finds this was not a specific and legitimate reason supported by substantial evidence to discredit Dr. Kaye's medical opinion. Although an ALJ may discredit a doctor's opinion that is brief or conclusory, Dr. Kaye's opinion was neither. *See Bray*, 554 F.3d at 1228. Dr. Kaye had treated plaintiff for a number of years, suggesting that his letter and medical opinion were been based on years of treatment. Although Dr. Kaye did not include objective medical evidence in this particular letter, considering the medical record as a whole, Dr. Kaye's letter was based on objective medical evidence from his treatment of plaintiff that showed plaintiff suffered from a debilitating mental impairment. (*See* tr. 262, 449, 621, 692, 801, 818, 1726, 1729, 1732, 1754, 1757, 1759, 1772, 1854.) Because the ALJ failed to consider Dr. Kaye's medical opinion in the context of the medical record as a whole, this court finds the ALJ erred by discrediting Dr. Kaye's medical opinion.

Finally, the ALJ rejected Dr. Kaye's letters, finding he gave no "specific limitations." (Tr. 20.) A physician's reports should demonstrate how a claimant's symptoms translate into specific functional deficits which preclude certain activities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Although failing to cite specific functional deficits is a legally sufficient reason to discredit the medical opinion of a treating physician, the ALJ's findings is not

supported by substantial evidence in the record as the medical record contains numerous treatment notes from Dr. Kaye describing plaintiff's mental impairment and limitations. As the ALJ improperly evaluated Dr. Kaye's medical opinion by discrediting his letters, and failing to consider the evidence his opinion as a whole, this court finds error.

B. *Dr. Rory Richardson.*

Next, plaintiff makes similar arguments regarding medical opinion evidence from Dr. Richardson. First, plaintiff argues that the ALJ erred by failing to address Dr. Richardson's September 5, 2005 medical opinion. (Pl.'s Opening Br. 12-17, Pl.'s Reply Br. 3-6.) Next, plaintiff argues that the ALJ failed to provide a legally sufficient reason to reject Dr. Richardson's February 4, 2006, October 20, 2008, and September 22, 2009 medical opinions. (Pl.'s Opening Br. 13-17). This court addresses each argument in turn.

First, plaintiff argues that the ALJ failed to consider Dr. Richardson's September 5, 2005 letter. (Pl.'s Opening Br. 12-17, Pl.'s Reply Br. 3-6.) On September 5, 2005, Dr. Richardson wrote a letter noting that he had been treating plaintiff for severe panic disorder and anxiety since February 18, 2005. (Tr. 575.) In his letter, Dr. Richardson wrote that he had been treating these medical conditions "with only partial success," and at that time plaintiff was "still experiencing panic attacks which are immobilized daily in the afternoon and evening hours with (sic) interferes with sleep and ability to leave his home at times." (*Id.*) Overall, Dr. Richardson noted that "prognosis at this time is guarded given the limited impact treatment has made in [plaintiff's] condition." (*Id.*)

As plaintiff correctly noted, the ALJ failed to consider this medical opinion. Similar to Dr. Kaye, Dr. Richardson had treated plaintiff for a number of years both before and after plaintiff's date last insured. (*See* tr. 594, 606, 697, 857-62, 864, 866-67, 883, 888, 1424, 1430, 1481, 1494, 1731,

1926-37, 1953, 1956.) Although the ALJ is not required to evaluate all evidence, the ALJ must provide an explanation for rejecting significant probative evidence. *See Vincent*, 739 F.2d at 1394-95. Considering Dr. Richardson's medical evidence as a whole, his letter is significant, probative evidence that the ALJ should have considered, because it summarized Dr. Richardson's overall findings and treatment regarding plaintiff's mental impairments. For this reason, the ALJ erred by failing to consider this letter.

Next, plaintiff argues that the ALJ erred by failing to provide a legally sufficient reason to discredit the medical opinion of Dr. Richardson from February 4, 2006, October 20, 2008, and September 22, 2009. (Pl.'s Opening Br. 13-17.) On February 4, 2006, Dr. Richardson wrote that it was his opinion that plaintiff "has been incapable of engaging in reasonably continuous employment from 12/7/05 through present." (Tr. 693, 696, 1672, 1676.) On October 20, 2008, Dr. Richardson wrote a second note stating the same finding. (Tr. 1927.) Finally, on September 22, 2009, Dr. Richardson wrote that plaintiff was "continuing treatment for the panic disorder" and that "this is one of the worse cases of Panic Disorder I have ever encounter (sic)." (Tr. 1926.) Dr. Richardson also noted that plaintiff was compliant with his treatment, but "[d]espite use of various treatment approaches, we have not been able to get this condition into remission." (*Id.*)

The ALJ gave Dr. Richardson's medical opinion "little weight" after finding Dr. Richardson's opinions "fail[ed] to list any impairment or any objective medical findings," that he did not provide an explanation for the term "reasonably continuous employment," and because the opinions were given three years after the date last insured. (Tr. 21.) Similar to this court's analysis regarding the ALJ's treatment of Dr. Kaye's medical opinion, this court finds the ALJ erred in discrediting Dr. Richardson's medical opinion. Dr. Richardson's opinion was supported by objective

Page 14 - OPINION AND ORDER

medical findings, given that he had treated plaintiff for a number of years. Additionally, the failure to list specific limitations in his letters was not a specific and legitimate reason to discredit his medical opinion in this case, because the ALJ failed to consider Dr. Richardson's medical opinion as a whole, which showed limitations relating to plaintiff's mental impairments. (*See* tr. 528, 575, 578, 870, 1494, 1731, 1927, 1931, 1935.) The ALJ improperly discredited Dr. Richardson's entire medical opinion concerning plaintiff's mental impairments by discrediting a few of Dr. Richardson's letters.

As the ALJ erred by failing to provide specific and legitimate reasons, supported by substantial evidence, for discrediting Dr. Richardson's medical opinion, this court finds the ALJ erred in evaluating Dr. Richardson's medical opinion.

*C.     Medical Opinions of Dr. Christian Kole, Dr. Roy Clark, Jr., Dr. Charles Bellville, and the Washington State Vocational Services Medical Evaluators.*

Finally, plaintiff argues that the ALJ failed to discuss the medical opinions of Drs. Kole, Clark, Bellville, and the Washington State Vocational Services Fund medical evaluators. (Pl.'s Opening Br. 18-20, Pl.'s Reply Br. 4-8.) Specifically, plaintiff argues that the ALJ failed to consider Dr. Kole's May 2, 2005 medical opinion, Dr. Clark's November 8, 2005 medical opinion, Dr. Bellville's June 2010 medical opinion, and the July 2010 Washington Vocational Services State Fund report. (*Id.*)

On May 2, 2005, Dr. Kole, a psychiatrist, conducted a Psychiatric Evaluation of plaintiff. (Tr. 625-40.) Dr. Kole found plaintiff's mood was irritable and that intellectually plaintiff was in the "average" range. (Tr. 637.) Overall, Dr. Kole diagnosed plaintiff with "[a]typical panic attacks," personality disorder with passive aggressive traits, contemporary stress, and a GAF score of 60. (*Id.*) Dr. Kole found plaintiff's panic disorder and panic episodes were "quite disabling in the sense that

Page 15 - OPINION AND ORDER

he is immobilized for a while, and they do not seem to respond to ordinary medication for panic disorder." (*Id.*)

On November 8, 2005, Dr. Clark performed a psychiatric evaluation of plaintiff. (Tr. 712-43.) During his examination, plaintiff reported to Dr. Clark that he experienced panic attacks which began after his shoulder injury. (Tr. 716.) Plaintiff also reported that he had tried "a number of different medications," but he did not benefit. (Tr. 718.) Upon examination, Dr. Clark concluded that plaintiff's impairment was "more congruent with an anxiety disorder with panic attacks due to a general medical condition, specifically his developing arrhythmia subsequently requiring a pacemaker than an anxiety condition developing as a proximate result of the covered injury." (Tr. 724.) Overall, Dr. Clark wrote that plaintiff's "mental status has reached a fixed and stable state" and that plaintiff "may benefit from continued treatment for his anxiety disorder with panic attacks. However, this treatment, . . . would be directed towards a condition independent of the covered injury and its sequelae." (Tr. 738.)

On June 11, 2010, Dr. Charles Bellville conducted a psychiatric interview of plaintiff. (Tr. 1811-19.) Dr. Bellville found plaintiff's judgment and insight were "considered fair to limited." (Tr. 1815.) After reviewing medical records, Dr. Bellville reported that plaintiff's treatment for his panic attacks "has not been very successful," but he gets "some benefit from contact with psychologist Rory Richardson and continuing to take lorazepam . . . at night." (Tr. 1816.) Overall, Dr. Bellville diagnosed plaintiff with panic disorder without agoraphobia; generalized anxiety disorder, mild alcohol abuse and marital discord, mixed personality traits including avoidant and passive-aggressive traits, contributing physical problems related to his surgeries, industrial injury, arrhythmia, gout, marked psychological and environmental. (*Id.*) With regards to his ability to work, Dr. Bellville

wrote that there were "several challenges for working from a psychiatric perspective" including plaintiff's "marked fear of driving," and that his workplace would "need to allow him to be able to leave if he had a panic attack, became angry or agitated." (Tr. 1817.) Dr. Bellville further wrote that "[f]rom a psychiatric perspective, if he is able to leave a job when he is anxious, anger (sic), or having a panic attack, then he might be able to perform a job. His overall irritability will make it significantly difficult for him to get along with other people." (*Id.*) He recommended that plaintiff continue counseling with Dr. Richardson and continue using anti-anxiety medications, but did note these were "considered palliative at this point and is not curative or rehabilitative." (Tr. 1818.)

Finally, in July 2010, the Washington Vocational Services State Fund found "[Plaintiff] unable to work or participate in vocational services due to the [March 2000] industrial injury" and "[a]s based upon the psychiatric diagnosis, Generalized Anxiety Disorder, [plaintiff] has been permanently precluded from gainful employment." (Tr. 1843-44.)

As plaintiff correctly notes, the ALJ failed to consider any of these medical opinions when making the overall disability determination. The ALJ is required to consider the medical opinion as a whole, so the ALJ committed harmful error by failing to consider these medical opinions, which contained specific functional limitations based on plaintiff's mental health limitations, along with the other medical opinions concerning plaintiff's mental impairments.

### *Remand*

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harmen v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative

proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the ALJ failed to properly evaluate medical opinion evidence from Drs. Kaye, Richardson, Kole, Clark, Bellville, and the Washington State Vocational Services medical evaluators, who all found that plaintiff suffered from anxiety attacks. Because Drs. Kaye, Richardson, Kole, Clark, and the Washington State Vocational Services medical evaluators found plaintiff's anxiety to be debilitating and Dr. Bellville found plaintiff's anxiety disorder to be "fixed and stable," this court finds issues still remain that remand for further proceedings.

\\\\\

Page 18 - OPINION AND ORDER

*Conclusion*

For the reasons above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this __11th__ day of January, 2018.

_____
JOHN V. ACOSTA
United States Magistrate Judge